IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TALISIA J. FOSTER,**  CASE NO. 3:21 CV 2402

    Plaintiff,

    v.  JUDGE JAMES R. KNEPP II

**JEEP COUNTRY FEDERAL CREDIT UNION,**

    Defendant.  **MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Pending before this Court is a motion for judgment on the pleadings (Doc. 27) filed by Defendant Jeep Country Federal Credit Union ("Jeep Country"). *Pro se* Plaintiff Talisia Foster opposed (Doc. 28) and Jeep Country replied (Doc. 29). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367.

For the reasons discussed below, the motion is granted.

### BACKGROUND

This case arises out of the sale and financing of a 2018 Dodge Durango ("vehicle"). (Doc. 22-1, at ¶ 29). On November 30, 2020, Plaintiff purchased the vehicle from non-party Rouen Chrysler Dealership ("Dealership"). *Id.* at ¶ 5. The vehicle was financed through Jeep Country. *Id.* at ¶¶ 3-8. Plaintiff signed a Loan Agreement wherein she agreed to pay $570.86 per month for 72 months. (Doc. 1-10). The Dealership told Plaintiff she was responsible for obtaining insurance coverage. *Id.* at ¶ 5. Plaintiff alleges Jeep Country "created their own charge outside of the finance charge" and never furnished a separate document "setting forth the cost of

the insurance if obtained from or through the creditor". *Id.* at ¶¶ 6-7. Plaintiff claims that because of this omission she paid more for insurance than if she had obtained it through the creditor. *Id.* at ¶ 8.

In September 2021, Jeep Country locked Plaintiff's checking account and, without permission from Plaintiff, withdrew $250 for a payment that was fifteen days late. *Id.* at ¶¶ 9-10. Plaintiff missed the payment for the first time because she was suspended from her job. *Id.* at ¶ 11. Plaintiff contacted Jeep Country to inquire about their authority to lock the account and withdraw funds. *Id.* at ¶ 12. A representative responded that the language was included in the November 30, 2020 contract. *Id.* at ¶ 13. Plaintiff was not familiar with this provision. *Id.* at ¶ 14. She sent Jeep Country a "Cease & Desist" on debt collection until it provided her with a validation of debt by way of sending the original contract with a "wet ink signature/certified copy" and an audit trail. *Id.* Jeep Country sent Plaintiff a copy of the contract but never sent an audit trail. *Id.* at ¶ 15.

On October 1, 2021, Jeep Country attempted to collect another missed payment. *Id.* at ¶ 16. On October 6, 2021, Plaintiff sent Jeep Country an "affidavit/written notice" to rescind the November 2020 contract. *Id.* at ¶ 19. Jeep Country refused to rescind the contract or return payments to Plaintiff (*id.* at ¶¶ 20-21) and continued to send "presentments" by mail to collect payments (*id.* at ¶ 23). Jeep Country also refused to offer Plaintiff notary services for litigation documents. *Id.* at ¶¶ 24-26. Jeep Country refused to give Plaintiff her bank statements and continued to withdraw payments from the checking account the third week of each month. *Id.* at ¶ 27.

On December 23, 2021, Plaintiff filed the instant action. *Id.* at ¶ 28. On December 28, 2021, Plaintiff's neighbor told her someone was taking the vehicle. *Id.* at ¶ 29. Plaintiff ran

outside and attempted to stop the tow-truck driver from repossessing the vehicle; she also called police for assistance. *Id.* at ¶¶ 30, 34. Plaintiff attempted to stop the tow driver from leaving but he "kept his foot on the gas as a threat to hit" her and did not stop until he was a "second away". *Id.* at ¶ 36. The tow driver jumped out of the truck and yelled at Plaintiff. *Id.* at ¶¶ 37-38. She eventually moved out of fear she would be struck. *Id.* at ¶ 39.

Plaintiff called Jeep Country, which informed her she could not redeem the vehicle unless she paid the full loan balance. *Id.* at ¶ 45. When Plaintiff questioned Jeep Country's authority to require the full balance to be paid for redemption, a representative said she was not required disclose that information. *Id.* at ¶ 44. On January 5, 2022, Plaintiff received a letter, dated December 28, 2021, from Jeep Country stating she had fifteen days to cure missed payments by paying $1,141.72 for past due payments, $350 for repossession fees, and $3,916.00 for insurance. *Id.* at ¶ 49.

On January 20, 2022, Plaintiff sent Jeep Country an "Affidavit of Truth for Notice of Intent to File Complaint in Federal Court and Deprivation of Rights Under Color of Law". *Id.* at ¶ 52. Jeep Country did not respond. *Id.* at ¶ 53. On February 16, Jeep Country sent an "adjustment letter" which stated Plaintiff was required to pay for insurance on the vehicle in order to redeem it. *Id.* at ¶ 54. Plaintiff has rented a vehicle for $280 per week from a family member since the vehicle was repossessed. *Id.* at ¶ 57. In November 2021, Jeep Country reported the missed payments and Plaintiff's credit score dropped from 680 to about 500. *Id.* at ¶ 61.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas County*, 799 F.3d 530, 536-37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, the complaint must state factual allegations that allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. "Additionally, [Courts] liberally construe pro se filings . . . and hold such complaints to less stringent standards." *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 676 (6th Cir. 2018) (internal quotations omitted).

**DISCUSSION**

Plaintiff brings nine claims against Jeep Country: (1) disclosure of the right of recission under the Truth in Lending Act, 15 U.S.C. § 1635(a) ("TILA"); (2) disclosure of the finance charge under the TILA; (3) failure to validate debt under the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5511; (4) refusal of the right to rescind under TILA; (5) harassment and threatening tactics; (6) unlawful repossession under Ohio Revised Code § 1309.609; (7) deprivation of Fourth Amendment rights under § 1983; (8) intentional infliction of emotional

4

distress for harassing and threatening tactics and refusal to redeem property; and (9) willfully furnishing inaccurate and false information under the Fair Credit Reporting Act ("FCRA"). *See* Doc. 22-1.[1] Jeep Country contends it is entitled to judgment on the pleadings on each of Plaintiff's claims.

For the following reasons, the Court grants with prejudice Jeep Country's motion as to Plaintiff's federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses them without prejudice.

Truth in Lending Act

Plaintiff brings three claims for violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. Two of the claims, failure to disclose the right of rescission and failure to disclose the finance charge, arise out of conduct at the time of contracting. Jeep Country argues these claims are barred by the one-year statute of limitations. (Doc. 27, at 4). Plaintiff contends she is entitled to equitable tolling. (Doc. 28, at 4).

Plaintiff's third claim under TILA is for failure to honor her right to rescind the contract. Jeep Country argues this claim is time barred by the statute of limitations, and alternatively, that automobile loans are not subject to rescission under TILA where the security interest is taken in the vehicle itself. (Doc. 27, at 5-6). Plaintiff responds she was entitled to recission based on the fraudulent statements Jeep Country made at the time of contracting. (Doc. 28, at 4).

For the following reasons, Plaintiff's claims under TILA are dismissed.

---

1. The Amended Complaint (Doc. 22-1) includes multiple claims brought under general factual headings. Because courts "liberally construe pro se filings . . . and hold such complaints to less stringent standards[,]" the Court construes the Amended Complaint as bringing the nine above-mentioned claims. *Brent*, 901 F.3d at 676.

*TILA Disclosure*

"[T]he purpose of [TILA is] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601. Under 15 U.S.C. § 1640, creditors who fail to abide by the disclosure requirements established in TILA may be subject to civil liability.

"A TILA claim must be filed within one year from the date of the occurrence of the violation." *Rajapakse v. Credit Acceptance Corp.*, 2021 U.S. App. LEXIS 6591, at *5 (6th Cir.) (internal quotation omitted). "The limitations period for claims alleging violation of disclosure requirements begins running when the agreement is entered and the lender does not make the required disclosures." *Id.* However, the statute of limitations in TILA may be equitably tolled. *Lester v. Wow Car Co.*, 675 F. App'x 588, 590 (6th Cir. 2017).

Plaintiff signed the contract with Jeep Country on November 30, 2020. (Doc. 22-1, at ¶ 3). Plaintiff filed suit on December 23, 2021, more than a year after the agreement was entered. *See* Doc. 1. The TILA disclosure claims are time-barred and subject to dismissal unless saved by equitable tolling.

"Equitable tolling may be available 'when inequitable circumstances prevent a plaintiff from suing before the statutory period runs.'" *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 844 (N.D. Ohio 2010) (quoting *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 908 (E.D. Mich. 2003)). The Sixth Circuit has held that equitable tolling may be appropriate for TILA claims in limited circumstances involving fraudulent concealment. *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984).

To establish entitlement to equitable tolling, Plaintiff must allege and establish the following:

> (1) Defendant concealed the conduct that constitutes the cause of action; (2) Defendant's concealment prevented Plaintiff from discovering the cause of action within the limitations period; and (3) until discovery, Plaintiff exercised due diligence in trying to find out about the cause of action. Moreover, "the acts constituting fraudulent concealment" must be "pleaded with particularity" in the complaint.

*McVoy v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 3029087, at *3 (W.D. Mich.) (internal citations omitted).

Plaintiff has failed to allege or establish the factors necessary to warrant equitable tolling. Plaintiff's allegation that Jeep Country "fraudulently misrepresented itself" is conclusory. (Doc. 22-1, at ¶ 8). There are no facts "pleaded with particularity" to show Jeep Country acted fraudulently. Plaintiff does not allege Jeep Country's concealment prevented her from discovering the cause of action within the limitations period; she attempted to rescind the contract on October 6, 2021, by way of an "affidavit/written notice" before the one-year limitation period ran. *Id.* at ¶ 19. And lastly, the Complaint does not set forth facts supporting a reasonable inference she acted diligently. Plaintiff only began to act on this cause of action after she missed payments due to Jeep Country. *Id.* at ¶ 11.

Therefore, Plaintiff has not carried her burden in demonstrating she is entitled to equitable tolling, and her TILA disclosure claims are barred by the statute of limitations.

*TILA Rescission*

Unlike Plaintiff's claims for damages arising out of nondisclosure of certain material terms, "[t]he right to rescind is not dependent upon the one year statute of limitations period for a claim for damages." *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 248 (6th Cir. 1980). The Sixth Circuit summarized the right to rescind under TILA, codified as 15 U.S.C. § 1635, as follows:

> One of TILA's remedial measures is a right to rescind certain consumer credit transactions. Under the Act, a borrower shall have the right to rescind the transaction until midnight of the third business day after the transaction is completed or the necessary disclosures are furnished, whichever is later. This regime grants borrowers an unconditional right to rescind for three days, after which they may rescind only if the lender failed to satisfy the Act's disclosure requirements. But even if the lender fails to give proper disclosures, the right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first.

*Segrist v. Bank of N.Y. Mellon*, 744 F. App'x 932, 935 (6th Cir. 2018) (internal citations omitted). However, by its express language, § 1635 is applicable only where a security interest is taken in "property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635; *see also Slimm v. Bank of Am. Corp.*, 2013 U.S. Dist. LEXIS 62849, at *61 (D.N.J.) ("15 U.S.C. §§ 1635 and 1640 — only apply to a consumer's 'principal dwelling'").

The Truth-In-Lending Disclosure form attached to the Complaint (Doc. 1-10) specifically identifies the "goods and property being purchased" (that is, the vehicle) as the collateral Jeep Country took a security interest. Because Jeep Country took no security interest in Plaintiff's principal place of dwelling, the right to rescind under § 1635 is inapplicable.

Therefore, all of Plaintiff's claims arising under TILA are dismissed with prejudice.

Consumer Financial Protection Act

Plaintiff asserts Jeep Country's alleged failure to validate debt constituted "Unfair, Deceptive, or Abusive Acts or Practices" under the Consumer Financial Protection Act ("CFPA"), codified as 12 U.S.C. § 5511. (Doc. 22-1, at ¶¶ 9-18). The Complaint contains the legal conclusion that Jeep Country failed to validate the debt but also includes a factual allegation that it sent her a copy of the contract. *Id.* Plaintiff also alleges she was behind on payments (*id.* at ¶ 11) and wanted time to review the contract and "audit trail" prior to Jeep

8

Country collecting the missed payment (*id.* at ¶¶ 14, 16). However, Plaintiff's lack of knowledge of the contents of the contract she reviewed and signed does not constitute an unfair act on the part of Jeep Country. "It is a basic tenet of contract law that a person is assumed to have read and understood documents that he or she signs; a lack of understanding or failure to read the contract's provisions does not relieve a party from the terms of that agreement." *Gallegos v. Transp. Ins. Agency*, 2011 U.S. Dist. LEXIS 137676, at *9 (N.D. Ohio).

More importantly, the CFPA does not create a private right of action. *Simpson v. Xerox Educ. Servs., LLC*, 2017 U.S. Dist. LEXIS 207941, at *4 (W.D. Ky.) (citing *Jones v. Deutsche Bank Nat'l Trust Co.*, 2017 U.S. Dist. LEXIS 170721, at *5 (M.D. Tenn.)). Thus, even if Jeep Country violated the CFPA, the Act does not permit Plaintiff to bring a civil action and obtain relief. Plaintiff has not stated a claim that would entitle her to the relief she seeks. *Id.* (citing *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 472 (E.D.N.Y. 2015) (concluding that the Act did not create a private right of action and refusing to read such a right of action into the statute)).

For these reasons, Plaintiff's CFPA claim is dismissed with prejudice.

<u>Fair Credit Reporting Act</u>

Plaintiff brings a claim under the Fair Credit Reporting Act, 15 U.S.C. § 1681, for Jeep Country's refusal to rescind the contract and subsequent reporting of late payments to credit reporting agencies. (Doc. 22-1, at ¶¶ 60-64). Jeep Country contends it had no duty to rescind the contract and Plaintiff has failed to allege facts to support a FCRA claim. (Doc. 27, at 13-14). Jeep Country additionally argues FCRA does not provide for a private right of action. (Doc. 28, at 7-8).

"FCRA exists to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (internal citation omitted). "FCRA expressly creates a private right of action to enforce many of its terms. Consumers may bring suit to recover actual damages, and potentially attorney's fees and costs, from any person who is negligent in failing to comply with any requirement imposed with respect to any consumer under the Act." *Id.* at 615 (internal citations omitted). Additionally, when a person "willfully fails to comply with any requirement imposed with respect to any consumer, that consumer may seek actual or statutory damages, as well as punitive damages and attorney's fees and costs." *Id.*

Plaintiff has not stated a plausible claim for relief under FCRA. *See Ashcroft*, 556 U.S. at 678. The allegations do not contemplate a violation of "fair and accurate credit reporting". *Boggio*, 696 F.3d. 614. Instead, Plaintiff reiterates her rights under TILA. *See e.g.*, Doc. 22-1, at ¶ 60. The basis of Plaintiff's claim is that she was entitled to rescission of the contract under TILA (Doc. 22-1, ¶¶ 60-64) and was therefore no longer responsible for the payments on the vehicle. However, above, this Court found Plaintiff was not entitled to rescission under TILA. Additionally, the Complaint states FCRA prohibits Jeep Country from reporting "their personal experiences with the plaintiff on her consumer file[.]" (Doc. 22-1, at ¶ 63). Plaintiff offers no authority supporting her argument and does not direct this Court to any specific term of FCRA Jeep Country violated. *Id.* at ¶¶ 60-64. Plaintiff has not pled sufficient factual allegations to support a FCRA claim.

This claim is dismissed with prejudice.

Fourth Amendment

Plaintiff alleges Jeep Country's repossession efforts, through its agent Pro-Tow, violated her Fourth Amendment right to be free from unreasonable search or seizure, citing 42 U.S.C. § 1983. *Id.* at ¶¶ 43-44. Jeep Country moves to dismiss this claim arguing it is neither a state actor nor was it acting under the color of law. (Doc. 27, at 10-11).

"Section 1983 offers a federal remedy when a state actor deprives a person of 'rights, privileges, or immunities secured by the Constitution.'" *Durham v. Estate of Losleben*, 744 F. App'x 268, 270 (6th Cir. 2018) (quoting 42 U.S.C. § 1983). "In order to assert a § 1983 civil rights claim, a plaintiff must allege and prove that a person acting under color of state law deprived [her] of a right secured by the federal Constitution or laws of the United States." *Daniels v. Charter One Bank*, 39 F. App'x 223, 225 (6th Cir. 2003) (citing *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)). "Moreover, the protections afforded to citizens by the Fourth and Fourteenth Amendments apply only to state or governmental action as well." *Id.*

"Several courts have found that credit unions are not state actors." *Smith v. Del. First Fed. Credit Union*, 395 F. Supp. 2d 127, 130 (D. Del. 2005) (citing *Francis v. Northeast Cmty. Fed. Credit Union*, 2003 U.S. Dist. LEXIS 20342 (N.D. Cal. 2003); *Hauschild v. Nielsen*, 325 F. Supp. 2d 995 (D. Neb. 2004); *Heiskala v. Johnson Space Ctr. Fed. Credit Union*, 474 F. Supp 448 (S.D. Tex. 1979)). Although the Sixth Circuit does not appear to have weighed in on the issue, at least one district court within the Circuit has held that federal credit unions are not state actors. *See Palmer v. Mann*, 2009 U.S. Dist. LEXIS 88981, *6 (W.D. Ky.) ("although a credit union may have the word 'federal' in its name, it is not part of the federal government"). While governments may regulate credit unions, "regulation alone is not enough to make a private entity

and a government agency interdependent. The control and management of a federal credit union is not vested in the federal government, but democratically in the members themselves and in their duly elected board of directors" *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1132 (9th Cir. 1994). "The fact that it is federally insured does not make it a government entity." *Francis*, 2003 U.S. Dist. LEXIS 20342, at *3. This Court agrees that federal credit unions are not state actors.

Also, "[t]he well-established law in this circuit is that the private creditor who alone repossesses secured collateral does not act under color of state law. Specifically, self-help repossession . . . does not constitute state action." *United States v. Coleman*, 628 F.2d 961, 963 (6th Cir. 1980); *see also Garcia v. Dykstra*, 260 F. App'x 887, 895 (6th Cir. 2008) ("The Sixth Circuit has held that an officer's mere presence at the scene to keep the peace while parties carry out their private repossession remedies does not render the repossession action that of the state.") (internal quotations omitted).

Jeep Country's repossession efforts were not carried out by the state or under the color of law. Plaintiff must pursue any claim related to the repossession under the applicable Ohio statute or common law. Plaintiff's § 1983 claim is dismissed with prejudice.

State Law Claims

Plaintiff also appears to bring state law claims. *See* Doc. 22-1. "[Courts] liberally construe pro se filings . . . and hold such complaints to less stringent standards." *Brent*, 901 F.3d at 676. With this principle in mind, the Complaint contains state law claims for harassing and threatening tactics and intentional infliction of emotional distress (Doc. 22-1, at ¶¶ 23-27, 56), breach of contract (*id.* at ¶¶ 9-18), unlawful repossession under Ohio Revised Code § 1309.609

12

(*id.* at ¶ 42), and violations of the Uniform Commercial Code as adopted in Ohio (Ohio Revised Code § 1301, *et seq.*) (*id.* at ¶ 35).

Jeep Country contends Plaintiff's UCC claim is not pleaded in the Amended Complaint (Doc. 29, at 4), the claim for "Harassing and Threatening Tactics" is an allegation of facts in search of a cause of action (Doc. 27, at 9), and that it is not in breach of contract because it followed the "express terms of the Loan Agreement" (*id.* at 13).

Where "state-law claims [arise] from the same common nucleus of operative fact as the federal claims, the district court ha[s] supplemental jurisdiction over those claims." *Jones v. City of Elyria*, 947 F.3d 905, 912 (6th Cir. 2020). Supplemental jurisdiction is a doctrine of discretion, not of right. *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). "Such supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 129 (2009)). Nonetheless, the Court may decline to exercise its supplemental jurisdiction when the original jurisdiction claims have been dismissed. 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court should balance judicial economy and avoidance of duplicative litigation against needlessly deciding state law issues. *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004).

Because all federal claims alleged in this case have been dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See Gaff v. FDIC*, 814 F.2d 311, 319 (6th Cir. 1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to

exercise pendent jurisdiction over state law claims."). Plaintiff's state law claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Judgment on the Pleadings (Doc. 27) be, and the same hereby is, GRANTED as to Plaintiff's federal claims; and it is

FURTHER ORDERED that Plaintiff's state law claims be, and the same hereby are, DISMISSED WITHOUT PREJUDICE.

   s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE